**United States District Court**
For the Northern District of California

*E-Filed 9/8/14*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN R. MARTINEZ, | No. C 12-6403 RS (PR) |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT;** |
| v. | |
| G. PIMENTAL, et al., | **ORDER REFERRING ACTION TO JUDGE VADAS** |
| Defendants. | |

## INTRODUCTION

Plaintiff John Martinez is a state prisoner proceeding *pro se* in this civil rights action brought under 42 U.S.C. § 1983, in which he alleges that defendants, G. Pimental, Greg D. Lewis, and M. Cate, employees of Pelican Bay State Prison, violated his rights under the First Amendment by confiscating an outgoing letter. Defendants move for summary judgment. For the reasons stated herein, defendants' motion for summary judgment is DENIED in part and GRANTED in part. The action will be sent to mediation, as described in the conclusion of this order.

# BACKGROUND

The facts of this case are undisputed. Plaintiff is housed in the Segregated Housing Unit ("SHU") of Pelican Bay State Prison because he is a validated associate of the Mexican Mafia prison gang. On March 6, 2011, plaintiff attempted to mail a letter to Marcia Duncan, a friend and non-inmate. (Compl. ¶ 5.) The letter asked Duncan to send stationery and cards to Angel Serrano, a fellow inmate and also a validated associate of the Mexican Mafia gang who resides in the SHU:

> Remember Angel [Serrano]! The one you send stationery packs to sometime! I saw him the other day, he's a very happy guy . . . I want you to do me a huge favor, and send him a stationery pack along with five cards (no glitter kind). One for a mom, one for a sister, a friend, and two for a daughter. I know he will highly appreciate it.

(Defs.' Mot. for Summ. J. ("MSJ"), Pimentel Decl. ¶ 15.) Before it was mailed, the letter was confiscated by Pelican Bay State Prison officials, whereupon plaintiff was issued a "Notification of Disapproval — Mail" authorized by defendant Pimental. (Compl. ¶ 8.) Plaintiff's letter was confiscated because it had been deemed contraband by prison officials. (*Id.*) Defendant Pimental deemed it contraband because "Martinez was attempting to send compensation in form of stationery and cards to Serrano as a way to show his loyalty and allegiance to the gang." (MSJ, Decl. Pimental ¶ 15.) As this was a common method used by prison gangs to promote an individual's status within a gang, Pimental classified the letter as contraband and confiscated it. (*Id.* ¶¶ 15–16.) Plaintiff claims that defendants violated his First Amendment right to free speech. (Compl. ¶ 16.)

# DISCUSSION

## I.  Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a

reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id*. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323.

## II. Claims

Plaintiff claims that (A) Pimentel violated his First Amendment rights by confiscating his letter. He also alleges that (B) Warden Greg Lewis and Matthew Cate, Secretary of the California Department of Corrections and Rehabilitation, are liable as supervisors.

### A. Pimentel

Plaintiff claims that defendant Pimentel violated his First Amendment right to free speech when he confiscated plaintiff's letter addressed to Marcia Duncan. (Compl. ¶ 16.) A prisoner retains those First Amendment rights that are "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001) (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977)). This right includes the right to

send and receive mail. *See Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)).

A limitation on *outgoing* mail is justified only if the limitation in question (1) "furthers an important governmental interest unrelated to the suppression of expression," and (2) is "no greater than necessary or essential" to protect the governmental interest involved. *Procunier v. Martinez*, 416 U.S. 396, 413 (1974), overruled on other grounds by *Abbott*, 490 U.S. at 413–14.[1] Prison officials are not required to show with certainty that any particular correspondence would have adverse consequences because they are given some latitude in anticipating the probable consequences of allowing a certain speech in and out of a prison environment. *Procunier*, 416 U.S. at 414; *see also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (courts owe "substantial deference to the professional judgment of prison administrators"). Confiscation of outgoing mail must further an important or substantial governmental interest unrelated to the suppression of expression.[2] *Procunier*, 416 U.S. at 413 (refusal to send letters concerning escape plans or proposed criminal activity would be an obvious example of justifiable censorship).

Defendants have not met their burden to show that confiscation of plaintiff's mail was no greater than necessary to protect the interest of prison security and safety. Pimental declares that "Martinez was attempting to send compensation in [the] form of stationery and cards to Serrano as a way to show his loyalty and allegiance to the gang." "This is a method," he continues, "routinely used by prison gang associates to promote their status within their gangs." (MSJ, Pimental Decl. ¶ 15.) Defendants' assertions are generalized and

---

[1] The *Procunier* test is used in cases relating to outgoing prisoner mail. Defendants did not use this test in their motion, but instead used that of *Turner v. Safely*, 482 U.S. 78 (1987), which is the appropriate standard in cases regarding <u>incoming</u> mail received by prisoners.

[2] The Supreme Court has listed with approval certain kinds of outgoing mail that reasonably might be disallowed. Such kinds are those which (1) might violate postal regulations, e.g., threats, blackmail, or contraband; (2) indicate a plot to escape; (3) discuss criminal activities; (4) indicate that the inmate is running a business while he is in confinement; or (5) contain codes or other obvious attempts to circumvent legitimate prison regulations. *Procunier*, 416 U.S. at 414 n.14.

speculative: "The gang investigators based on the content of the letter that [p]laintiff was likely attempted to send compensation . . . to Serrano." (MSJ at 7.) These assertions are not supported by any evidence specifically indicating, for example, that plaintiff owed a gang-related debt to Serrano, that his gang status would be improved if he persuaded Duncan to send the requested materials, that the probable consequences of the letter would threaten prison security or safety, or that the letter contained hidden messages or codes. A trier of fact could read the text of the letter as simply a request for birthday cards and writing paper. Such an interpretation is bolstered by Marcia Duncan's declaration in which she avers that she had offered to help Angel "with stationery and canteen [items]" because Angel had been given such items to plaintiff in 1998 and 1999, when plaintiff lacked such items. (Pl.'s Opp. to MSJ, Ex. A, Duncan Decl. ¶ 6.)

While prison gang members may in fact use identical methods to promote their gang status, defendants have not shown evidence that that is what occurred in this particular instance. Courts owe "substantial deference" to the judgments of prison administrators, *Bazzetta*, 539 U.S. at 132, however, there is not sufficient evidence in the record showing that such deference is owed here. Accordingly, the motion for summary judgment as to Pimentel is DENIED.[3]

### B. Supervisory Defendants Lewis and Cate

Plaintiff claims that Lewis and Cate are liable as supervisors for Pimentel's acts, and for promulgating and enforcing the rules and regulations under which the mail was confiscated. A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Henry A. v. Willden*, 678

---

[3] Pimentel is not, as he asserts, entitled to qualified immunity. Among other requirements, a court must determine whether the right a defendant may have violated was "clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001). It is without question that the First Amendment right to send and receive mail was clearly established before 2011, the year in which the incident occurred. It would therefore be clear to a reasonable officer that his conduct would have been unlawful.

F.3d 991, 1003–04 (9th Cir. 2012). A plaintiff must also show that the supervisor had the requisite state of mind to establish liability, which turns on the requirement of the particular claim — and, more specifically, on the state of mind required by the particular claim — not on a generally applicable concept of supervisory liability. *Oregon State University Student Alliance v. Ray*, 699 F.3d 1053, 1071 (9th Cir. 2012).

Defendants are entitled to summary judgment as a matter of law. Plaintiff's allegations are conclusory and he has not shown any evidence showing that any supervisory defendant had a personal involvement in any alleged deprivation of his constitutional rights, or that there is a causal connection between any defendant and a constitutional violation. Accordingly, defendants' motion for summary judgment is GRANTED in favor of defendants Lewis and Cate.

**CONCLUSION**

Defendants' motion for summary judgment (Docket No. 13) is DENIED as to the claim against defendant Pimentel. The motion is GRANTED as to the claims against defendants Lewis and Cate. Judgment will be entered in their favor when the action is terminated. Defendant W. Anthony was never served with the complaint, his summons having been returned as unexecuted. (Docket No. 6). He is TERMINATED as a defendant in this action, and the claims against him are DISMISSED without prejudice.

This action, which now consists entirely of plaintiff's claim against Pimentel, is hereby REFERRED to Magistrate Judge Nandor Vadas for purposes of mediation and settlement pursuant to the Pro Se Prisoner Mediation Program. The proceedings will consist of one or more conferences as determined by Judge Vadas. They shall take place within 180 days of the date this order is filed. Judge Vadas shall coordinate a time and date for the conferences with all interested parties and/or their representatives and, within 180 days after the conclusion of the mediation, file a report regarding the prisoner mediation proceedings. **Plaintiff must attend all conferences scheduled by Judge Vadas. Failure to attend even one conference may result in the dismissal of this action with prejudice pursuant to**

**Federal Rule of Civil Procedure 41(b) for failure to prosecute.**  The Clerk shall forward a copy of this order to Judge Vadas's chambers, and terminate Docket No. 13.

**IT IS SO ORDERED**.

DATED: September 8, 2014

_____
RICHARD SEEBORG
United States District Judge